KUHN, J.
12Plaintiff-appellant, the Louisiana Association of Self-Insured Employers (LA-SIE) [1] appeals the trial court’s judgment, denying its petition for preliminary injunc-tive relief, seeking to enjoin the defendant-appellee, Louisiana Workforce Commission (LWC) from promulgating a medical treatment schedule setting forth medical treatment guidelines related to employers’ duty to furnish medical benefits under the Louisiana Workers’ Compensation Act[2] for allegedly failing to conform to the Louisiana Administrative Procedures Act (APA)[3] and the Louisiana Open Meetings Law (OML).[4] We affirm.
FACTUAL AND PROCEDURAL BACKGROUND
Under La. R.S. 23:1203.1, the director of the Office of Workers’ Compensation Administration of the LWC (the OWC director) has been mandated to promulgate rules in accordance with the APA to establish a medical treatment schedule. The OWC director appointed a Medical Advisory Committee (MAC) and contracted a medical director to assist him in fulfilling the statutory mandate. See La. R.S. 23:1203.1 F (providing for authority for appointed of MAC and for contracting of a medical director).
Urging the statutory mandate for promulgation of the medical treatment schedule by September 30, 2010 warranted prompt action, LWC proposed to |scomply with the statutory directive by enacting the medical guidelines required in La. R.S. 23:1203.1 by way of an emergency rule. See La. R.S. 49:953 B (providing a procedure for adoption of a rule on an emergency basis where an agency finds an imminent peril to the public health, safety, or welfare). On December 29, 2010, LASIE filed a petition for declaratory and injunc-tive relief seeking, among other things, to enjoin LWC from enforcing the proposed emergency rule for failure to comply with the APA. In a judgment signed on February 11, 2011, the trial court issued the preliminary injunction LASIE requested.
LWC subsequently undertook to promulgate the proposed medical treatment guidelines mandated under La. R.S. 23:1203.1 in accordance with the nonemer-gency procedure provided for under the APA. In response, LASIE amended its petition on June 15, 2011, and requested another preliminary injunction against LWC, averring that in its promulgation of the medical treatment schedule LWC had again failed to conform to APA mandates. LASIE’s amended petition for additional injunctive relief also alleged OML violations in the procedure undertaken in the promulgation process. LASIE sought to enjoin the enforcement of the medical treatment schedule as it appeared in the January 20, 2011 edition of the Louisiana Register.
After a hearing on LASIE’s entitlement to a preliminary injunction in which testi *400 monial and documentary evidence was adduced, the trial court denied the requested relief. A judgment in conformity with the trial court’s ruling was signed. This appeal by LASIE followed.
J4DISCUSSION
La. C.C.P. art. 3601 provides, “An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law_” It is not necessary for the applicant to show irreparable injury, however, when the act complained of is unlawful. See Hughes v. Muckelroy, 97-0618 (La.App. 1st Cir.9/23/97), 700 So.2d 995, 998. The only issues to be considered at a hearing on a preliminary injunction are whether the moving party has met its burden of proving that it is entitled to the relief sought as a matter of law and the likelihood that it will likely prevail on the merits of the case. See Farmer’s Seafood Co., Inc. v. State ex rel Dep’t of Public Safety, 2010-1746 (La.App. 1st Cir.2/14/11), 56 So.3d 1263, 1267.
Whether to grant or deny a preliminary injunction lies within the sound discretion of the trial court. Absent a clear abuse of this discretion, the trial court’s ruling will not be disturbed on appeal. City of Baton Rouge/Parish of East Baton Rouge v. 200 Government Street, LLC, 2008-0510 (La.App. 1st Cir.9/23/08), 995 So.2d 32, 36, writ denied, 2008-2554 (La.1/9/09), 998 So.2d 726.
Alleged APA Violation
La. R.S. 23:1203.1 provides in pertinent part:
B. The director shall, through the office of workers’ compensation administration, promulgate rules in accordance with the [APA] to establish a medical treatment schedule.
(1) Such rules shall be promulgated no later than January 1, 2011.
(2) The medical treatment schedule shall meet the criteria established in this Section and shall be organized in an interdisciplinary manner by particular regions of the body and organ systems.
C. The schedule shall be developed by the conscientious, explicit, and judicious use of current best evidence in making decisions about the care of individual patients, integrating clinical expertise, which is the proficiency and judgment that clinicians acquire through clinical experience and clinical practice, with the best available external clinical evidence from systematic research.
Under the APA, La. R.S. 49:953, which sets forth the procedure for the adoption of rules, requires an agency to publish notice of its intent to adopt, amend, or repeal any rule in the Louisiana Register. La. R.S. 49:953 A(l)(b)(i). The agency must provide interested persons with copies of the intended rule, and it must offer them a reasonable opportunity to respond. La. R.S. 49:953 A(2)(a) and (2)(b)(i). No rule shall be effective, nor may it be enforced, unless it was adopted in substantial compliance with the provisions of the APA. La. R.S. 49:954 A. Further, no rule shall be effective or enforceable unless (1) it was properly filed with the State Register, (2) a report on the rule was submitted to the legislature in accordance with La. R.S. 49:968, and (3) the approved economic and fiscal impact statements required by La. R.S. 49:953 A were filed with the Department of the State Register and published in the Louisiana Register. An administrative rule adopted in accordance with the requirements of the APA generally becomes effective upon its publication in the Louisiana Register. La. R.S. 49:954 B. See Liberty Mut. Ins. Co. v. Louisiana Ins. Rating Comm’n, 96-0793 (La.App. 1st *401 Cir.2/14/97), 696 So.2d 1021, 1025, writs denied, 97-2069 (La.12/19/97), 706 So.2d 451, and 97-2062 (La.12/19/97), 706 So.2d 452.
The statement of fiscal impact is required to be prepared by the proposing agency and submitted to the Legislative Fiscal Office for its approval. It is statutorily mandated to include a statement of the receipt, expenditure, or 1 ^allocation of state funds or funds of any political subdivision of the state. La. R.S. 49:958 A(S)(a). Similarly, the statement of economic impact is also required to be prepared by the proposing agency and submitted to the Legislative Fiscal Office for its approval. And it is statutorily mandated to include an estimate of the cost to the agency to implement the proposed action, including the estimated amount of paperwork; an estimate of the cost or economic benefit to all persons directly affected by the proposed action; an estimate of the impact of the proposed action on competition and the open market for employment, if applicable; and a detailed statement of the data, assumptions, and methods used in making each of the above estimates. La. R.S. 49:958 A(3)(b).
“Substantial compliance” with the APA rulemaking procedure has been held to mean that a reviewing court should determine whether the statute has been followed sufficiently so as to carry out the intent for which it was adopted. What constitutes substantial compliance with a statute is a matter depending on the facts of each particular case. Dorignac v. Louisiana State Racing Com’n, 436 So.2d 667, 669 (La.App. 4th Cir.1983).
LASIE maintains that LWC’s Fiscal and Economic Impact Statement (FEIS) failed to substantially comply with the requirements of the APA. LASIE asserts that LWC submitted a FEIS that was based on a version of the rule that was substantively revised prior to its publication in the Louisiana Register. Moreover, LWC failed to consult with other state agencies in crafting the FEIS it submitted, thereby misrepresenting to the Legislative Fiscal Office the fiscal and economic impact of the medical treatment schedule on other state agencies.
|7In challenging the efficacy of the FEIS submitted by LWC in support of promulgation of the medical treatment schedule, which LWC published in the January 20, 2011 edition of the Register, LASIE points to the testimony of OWC Medical Director, Dr. Christopher Rich. According to Dr. Rich, in response to public comments to the MAC, in particular those submitted by the Louisiana Workers’ Compensation Corporation addressing the proposed guideline having to do with maximum medical improvement and chronic pain, a substantive change was made to the December 1, 2010 version of the proposed guideline. Dr. Rich candidly admitted that there were several other changes as well although he did not state unequivocally that those were also substantive changes.
It is undisputed, and indeed LASIE stipulated, that the OWC director signed the FEIS on behalf of OWC on October 7, 2010.[5] Because the proposed medical treatment schedule was not published in the Louisiana Register until January 20, 2011, LASIE contends that the FEIS, which was not adjusted subsequent to the modifications of the proposed guidelines, does not comport with the statutory requirements of La. R.S. 49:953 A(3)(a) and (b).
LASIE further buttresses its challenge of the FEIS submitted by OWC by reli- *402 anee on the testimony of Vicki Jones, an executive staff officer employed by the Louisiana Office of Risk Management (ORM). Explaining the role of ORM, Jones testified that the agency acts as the insurance company for the State of Louisiana, providing, among other things, workers’ compensation coverage for between 107,000 and 120,000 state employees. Jones prepared her own information about the fiscal and economic impact she believed the proposed medical treatment guidelines would have on the ORM and concluded that the proposed | ^medical treatment schedule may cause an increase in costs to the state in its administration of workers’ compensation claims of state employees. Thus, her calculations led to her conclusion that OWC’s representation in its FEIS, which indicated no costs to the State of Louisiana as a result of the promulgation of the proposed medical guidelines, was not accurate. But in her cross-examination, Jones admitted that gathering information for her estimate of costs to the state did not permit her to conduct an empirical study and that her results were simply her estimate of what would possibly happen if the version of the proposed medical guidelines set forth in the January 20, 2011 publication of the Louisiana Register were promulgated. She also conceded that the medical guidelines would result in a savings to the state because ORM would pay attorneys less since the medical treatment schedule would provide a more definitive resolution to any issues that arose about a claimant’s entitlement to medical benefits.
LWC submitted the testimony of OWC Director Wes Hataway. He explained that he took office in February 2011, subsequent to both the date of OWC’s FEIS and its notice in the Louisiana Register addressing its promulgation of the medical treatment schedule. He also elaborated that he did not personally appoint the membership of the present MAC or contract the present medical director; these positions were filled by his predecessor. After reviewing ORM’s representations, Hataway noted that some of the assumptions made by Jones were simply incorrect and resulted in estimates that were greater than he believed would be yielded under the proposed guidelines. He emphasized that ORM representative Jones had not provided empirical data to support her suggested |flestimate and noted that OWC, likewise unable to provide empirical data, had simply made its own estimate of the impact just as ORM had.
Our review of the FEIS shows that it was signed by Robert E. Hosse, staff director for the Legislative Fiscal Office, on October 7, 2010. The statement set forth all the criteria required under La. R.S. 49:953 A(3)(a) and (b). As such, we find no eiTor in the submission of the FEIS by OWC. And LASIE does not assert that the submitted FEIS did not meet the requirements of La. R.S. 49:968 A, i.e., that it be filed with the Department of the State Register and published in the Louisiana Register.
Insofar as the efficacy of OWC’s FEIS, in light of both the challenge based on: (1) the admission of substantive changes in the medical treatment schedule between the date of execution of the FEIS and the date the proposed medical guidelines were published in the Louisiana Register; and (2) ORM representative Jones’ testimony offering another estimate of the fiscal and economic impact the medical guidelines may have on other state agencies, we find no error in the trial court’s conclusion.
The burden of proof of the lack of efficacy of the FEIS was borne by LASIE as applicant for the preliminary injunction. In support of its entitlement to a preliminary injunction based on a violation by *403 OWC of the APA because of an allegedly defective FEIS, LASIE offered no evidence particularizing the substantive amendment to the medical guidelines evincing an undeniable change in the estimate made by OWC in its FEIS. And OCW Director Hataway expressly outlined concerns with some of the premises ORM representative Jones asserted in drawing her estimate. With no evidence of an empirical study to support either | inOWC’s or ORM’s estimate, we feel constrained not to substitute our opinion for that of the Legislative Fiscal Office to whom the responsibility of passing muster of the efficacy of the FEIS is statutorily designated. See La. R.S. 49:953 A(3)(a) and (b). As such, we cannot say that OWC failed to carry out the intent of the APA’s requirement that an agency submit statements of fiscal and economic impact in its rulemaking procedure as required to substantially comply with the APA. Mindful that the issuance of the preliminary injunction does not preclude LASIE from more fully developing its assertions on the merits of its claim for declaratory and permanent injunctive relief, under the facts of this particular case, in light of the evidence offered at the hearing, we find no abuse of discretion by the trial court’s denial of a preliminary injunction.
Alleged OML Violation:
Louisiana’s OML requires every meeting of any public body shall be open to the public unless closed pursuant to La. R.S. 42:16, 17, or 18. La. R.S. 42:14. The provisions of La. R.S. 42:19 (requiring public bodies to give notice to the public of meetings) and La. R.S. 42:20 (requiring public bodies to keep written minutes of their open meetings) shall not apply to any meeting of a private citizens’ advisory group or a private citizens’ advisory committee established by a public body, when the members of such group or committee do not receive any compensation and serve only in an advisory capacity. La. R.S. 42:17(D).
In OWC Medical Director Dr. Rich’s testimony, he described the MAC as a group of twenty-two members from around the state. All the MAC members are healthcare providers, in multiple specialties, currently in private practice, and unpaid for their service on the statutorily created advisory committee. He outlined Inthe division of the membership into sub-panels for the trial court. Dr. Rich acknowledged that on two occasions, March 30, 2011 and April 4, 2011, he had spoken with various members of subpanels of the MAC by telephone to discuss responses to public comments. At neither telephone meeting was a quorum present. One telephone meeting was between Dr. Rich and two members of a subpanel; and at the other, Dr. Rich and three members of a subpanel participated. Dr. Rich stated that notice of the telephone meetings was not provided to the public and written minutes were not maintained.
Pointing to OWC Director Hataway’s written statement to a joint house and senate oversight subcommittee setting forth OWC’s principal reasons against adoption of any of the modifications suggested in public comments, LASIE urges that the MAC is a public body that has more authority than merely serving in an advisory capacity to the OWC director. The statement said, “OWC firmly believes the guidelines were developed in accordance with [La.] R.S. 23:1203.1 and accepts the MAC’s decision not to amend the schedule at this time.” (Emphasis added.) Thus, LASIE maintains that all meetings of the MAC are subject to the OML.
OWC Director Hataway testified about his written comments, stating:
What I was attempting to convey is that Dr. Rich had met with the MAC on two *404 occasions prior to this submission [of the medical treatment schedule], that as a result of those conversations with the members of the MAC that the decision was made that no changes would be made, and I agreed "with that decision.
Despite the words utilized in the statement, it is obvious that OWC Director Hataway was the party responsible for making the decision of what guidelines would be included in the medical treatment schedule promulgated under the 112statutory mandate of La. R.S. 28:1203.1. This result is underscored by the express statutory delegation of power set forth in La. R.S. 23:1203.1 B, which states, “The [OWC] director shall ... promulgate rules in accordance with the [APA] to establish a medical treatment schedule.” (Emphasis added.) The legislatively delegated role of the MAC is also set forth in the statute. La. R.S. 23:1203.1 G states that the MAC is to “provide recommendations” to the OWC director. La. R.S. 23:1203.1 H provides for the MAC to assist the OWC director in updating the promulgated medical guidelines stating, “The [OWC] director, with the assistance of the [MAC], is authorized to review and update the medical treatment schedule no less often than once every two years.” (Emphasis added.) Thus, La. R.S. 23:1203.1 contemplates that the governmental function of deciding what medical guidelines to promulgate in the establishment of a medical treatment schedule is delegated to the OWC director, and the MAC is to provide assistance with review and updating of those medical guidelines.
Because the evidence established that the MAC, whose membership is unpaid, is a committee of private citizens serving in an advisory capacity established by a public body, OWC, to assist the OWC director in reviewing and updating the medical treatment schedule, under La. R.S. 42:17(D) of the OML, it is not required to either provide notice of meetings to the public or maintain written minutes of any meetings. Accordingly, those provisions of the OML with which LASIE complains the MAC did not comply are not required to be performed by the MAC under the OML. And the trial court did not abuse its discretion in denying a preliminary injunction to LASIE on this basis.
113DECREE
For these reasons, the trial court’s denial of a preliminary injunction to LASIE is affirmed. Appeal costs are assessed against plaintiff-appellant, Louisiana Association of Self-Insured Employers.
AFFIRMED.
GUIDRY, J., concurs.

.According to its petition, LASIE "is a not-for-profit corporation organized and existing under the laws of the State of Louisiana.... [It] employs Louisiana workers and represents the interests of Louisiana employers who self-insure for workers' compensation.”

. See generally La. R.S. 23:1021-1361.

. See generally La. R.S. 49:950-987.

. See generally La. R.S. 42:11-28.

. The OWC director on October 7, 2010 was Chris Broadwater.