McCLENDON, J.
In this appeal, the plaintiffs contend that the trial court abused its discretion and erred in failing to grant them a preliminary injunction that would enjoin the defendants from depriving the plaintiffs of full access to and use of certain computer information. For the reasons that follow, we affirm the judgment of the trial court.
FACTUAL AND PROCEDURAL HISTORY
Matthew Morris is the sole owner and managing member of Complete Construction Contractors, LLC (CCC), a Louisiana residential and commercial construction company. On February 7, 2017, a warrant for the search and seizure of property located at the Baton Rouge office of CCC was issued for "[c]ompany [owned] computers, cellular phones, digital storage devices, customer ... files and billing invoices, and any information that would identify past or present employees."[1] Jeff *17 Hanson, the owner of Trust Technologies, LLC, d/b/a Trust IT, had been providing computer support and services to CCC since 2014. At the time of the search, Mr. Hanson was contacted by CCC for assistance, and he went to CCC's office. Law enforcement personnel advised Mr. Hanson to preserve all existing computer data in his possession.
On August 12, 2017, after the issuance of the search warrant and the arrest of Mr. Morris, Mr. Hanson sent a letter by email to Mr. Morris and CCC giving notice that Trust IT would no longer be providing technical services to CCC as of September 15, 2017. Mr. Hanson further stated that he wanted to give CCC as much notice as possible so it could secure a new IT provider and that Trust IT would provide assistance for the transition.[2]
On September 13, 2017, Mr. Hanson sent an email to Mr. Morris and Ashley Morris, Mr. Morris's wife, wherein Mr. Hanson gave an update of various matters, including ShareSync data. With regard to the ShareSync data, Mr. Hanson stated:
I will not be able to transfer the account to Matt directly. On the day of the original raid in February, law enforcement directed me to ensure that any data we provided for CCC was protected and to not delete any of that data. In light of my conversations with Matt yesterday, I contacted law enforcement to confirm it was acceptable to transfer the ShareSync account from Trust IT to Matt. They instructed me not to do so and retain custodianship of the account. As a result, we will continue as originally planned and provide the ShareSync data on a hard drive.
The following day, Mr. Hanson sent another email to Mr. and Mrs. Morris again advising them of the termination of services to CCC on September 15, 2017. Mr. Hanson advised Mr. Morris that he was not jeopardizing Mr. Morris's litigation in any way through the termination of services, stated that the data to be delivered to the plaintiffs could be accessed by them, and again recommended that they immediately secure the services of a new IT company. With respect to Mr. Morris's requests for additional IT services, Mr. Hanson agreed to keep the ShareSync account open until October 15, 2017. On September 21, 2017, Mr. Hanson gave Mrs. Morris an external USB hard drive containing data for CCC.[3] The receipt for the hard drive also contained a list of its contents with a screenshot of the files.[4]
*18 Mr. Hanson's deposition was taken on October 3, 2017. He testified that he did not have access or control to many of CCC's accounts, including RackSpace, QuickBooks, LastPass, Xactimate, BuilderTrend, NexVortexIP, GoDaddy, iPhones, iPads, iCloud, and Wunderlist. He also testified regarding the ShareSync account, stating that it is a cloud-based file storage and sharing system. Mr. Hanson testified that he had custodial access to the ShareSync account, but that Mr. Morris had access to the account and could see what files were deleted and restore them. Mr. Hanson stated that he, however, was the only person who could permanently delete a file. Mr. Hanson agreed to maintain the ShareSync account, provided that Mr. Morris and CCC pay the cost of keeping it open for one year in advance.
Shortly thereafter, on October 5, 2017, Mr. Morris and CCC filed a Petition for Temporary Restraining Order and Preliminary Injunction against Trust Technologies, LLC and Mr. Hanson, asserting that if Mr. Hanson and Trust IT shut down the various accounts, metadata evidence would be permanently lost, which would result in the spoliation of evidence needed to defend against allegations in civil and criminal proceedings against Mr. Morris.[5] The plaintiffs asserted that Mr. Hanson and Trust IT refused to preserve the data, and they prayed for a temporary restraining order and, after due proceedings, a preliminary mandatory injunction to prevent irreparable harm. The trial court issued a temporary restraining order and set the matter for hearing.
The hearing on the petition was held on November 27, 2017 and November 30, 2017, after which the trial court took the matter under advisement. Post-trial memoranda were filed to try to narrow the issues before the court, and on January 12, 2018, the trial court denied the petition for a preliminary injunction and vacated the temporary restraining order. The trial court signed a judgment on February 14, 2018, and the plaintiffs filed a suspensive appeal.
In their appeal, the plaintiffs assign the following as error:
1. The trial court erred when it required [the plaintiffs] to prove they would suffer irreparable loss, damage, or other harm that cannot be adequately compensated in money damages or is not susceptible to measurement by pecuniary standards to obtain a preliminary injunction enjoining defendant[s] from denying [the plaintiffs] full and effective access to their data and from taking any action that would result in the destruction of [the plaintiffs] data.
2. The trial court abused its discretion and erred when it ruled that [the plaintiffs] did not establish they would suffer irreparable loss, damage[,] or other harm that cannot be adequately compensated in money damages or is not susceptible to measurement by pecuniary standards if a preliminary injunction was not granted.
DISCUSSION
The writ of injunction is a harsh, drastic, and extraordinary remedy. It should only issue in those instances where the moving party is threatened with irreparable loss or injury and is without an adequate remedy at law. Concerned Citizens for Proper Planning, LLC v. Parish of Tangipahoa , 04-0270 (La.App. 1 Cir. 3/24/05), 906 So.2d 660, 664. Irreparable injury has been interpreted to mean a loss *19 that cannot be adequately compensated in money damages or measured by a pecuniary standard. Id.
Generally, plaintiffs seeking issuance of a preliminary injunction bear the burden of establishing by a preponderance of the evidence a prima facie showing that they will prevail on the merits and that irreparable injury or loss will result without the preliminary injunction. LSA-C.C.P. art. 3601 ; Hill v. Jindal , 14-1757 (La.App. 1 Cir. 6/17/15), 175 So.3d 988, 1002, writ denied, 15-1394 (La. 10/23/15), 179 So.3d 600. However, a threat of irreparable injury need not be shown when the deprivation of a constitutional right is at issue or when the act sought to be enjoined is unlawful. Id. The only issues to be considered at a hearing on a preliminary injunction are whether the moving party has met its burden of proving that it is entitled to the relief sought as a matter of law and the likelihood that it will likely prevail on the merits of the case. Louisiana Ass'n of Self-Insured Employers v. Louisiana Workforce Com'n , 11-1892 (La.App. 1 Cir. 3/28/12), 92 So.3d 397, 400.
Although the judgment on the preliminary injunction is interlocutory, a party aggrieved by a judgment either granting or denying a preliminary injunction is entitled to an appeal. LSA-C.C.P. art. 3612B; Hill , 175 So.3d at 1002. We are, however, mindful that appellate review of a trial court's issuance of a preliminary injunction is limited. The issuance of a preliminary injunction addresses itself to the sound discretion of the trial court and will not be disturbed on review unless a clear abuse of discretion has been shown. Hill , 175 So.3d at 1002.
In their appeal, the plaintiffs maintain that if the defendants shut down or close various computer services provided by CCC, metadata would be destroyed preventing them from defending themselves in their pending civil litigation and criminal proceedings.[6] They contend that their request for injunctive relief was filed to prevent the closing of the accounts and maintain the status quo to prevent the spoliation of evidence and ensure access to the data. Particularly, the plaintiffs assert that if the computer programs are shut down, metadata will be lost that is essential to their defenses. They allege that the defendants refuse to transfer the ShareSync account to them and that they had to pay the first year's "ransom" to the defendants so as not to lose the data.
To the contrary, the defendants assert that they have provided all of the data in their possession. They further contend that all data and accounts are maintained in the defendants' names and are paid for by the defendants, with the sole exception of the ShareSync account. The defendants also maintain that they have never prevented or restricted the plaintiffs from using or accessing data, including metadata, housed in the ShareSync account.
After consideration of the law and evidence, the trial court determined that "the plaintiffs have failed to present evidence sufficient to establish that the plaintiffs will suffer irreparable loss, damage or other harm that cannot be adequately compensated in money damages or is not susceptible to measurement by pecuniary standards" and denied the relief requested.
Based upon our review of the record, we can find no abuse of discretion by the trial court in denying the plaintiffs' petition for *20 a preliminary injunction. The record shows that the plaintiffs have neither been denied access to the ShareSync data, nor were they ever threatened by the defendants that their data would be destroyed. Although the plaintiffs argued that the defendants threatened no less than six times to close the accounts and delete the metadata, Mr. Hanson testified several times that he was willing to keep the ShareSync account open indefinitely if the plaintiffs would pay in advance to keep it open. He further testified that while closing the account would destroy metadata, this problem could be resolved by the hiring of a new IT provider.
Additionally, for the first time on appeal, the plaintiffs assert a violation of the Fourth Amendment to the United States Constitution. The plaintiffs maintain that the metadata is their intellectual property and that denying them access as a custodian to the metadata in the ShareSync account amounts to a seizure in violation of the Fourth Amendment. Further, they argue that refusing to give them full access to the data violates Louisiana law as well.[7] Therefore, they contend that they do not have to show irreparable injury in order to obtain the preliminary injunction.
Rule 1-3 of the Uniform Rules of Louisiana Courts of Appeal provides:
The scope of review in all cases within the appellate and supervisory jurisdiction of the Courts of Appeal shall be as provided by LSA-Const. Art. 5, § 10 (B), and as otherwise provided by law. The Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise.
Because the plaintiffs failed to submit this argument to the trial court, we find that the issue is not properly before us on appeal.
We also point out that if the plaintiffs are given custodial access to the ShareSync account, they would have the ability to destroy evidence, which is what the plaintiffs assert they are trying to prevent, and contrary to the direction of law enforcement. Rather than hindering the plaintiffs, this safeguard protects both the plaintiffs and the defendants.
Following our review of the record, we find that the plaintiffs failed to show that irreparable harm would occur without the issuance of a preliminary injunction. Accordingly, we cannot say that the trial court abused its discretion in failing to grant the preliminary injunction.
CONCLUSION
For the foregoing reasons, the February 14, 2018 judgment of the trial court is affirmed. All costs of this appeal are assessed to the plaintiffs, Matthew Morris and Complete Construction Contractors, LLC.
AFFIRMED.

The warrant was issued in connection with multiple criminal counts against Mr. Morris for residential contractor fraud, a violation of LSA-R.S. 14:202.1 ; contractor misapplication of payments, a violation of LSA-R.S. 14:202 ; theft of assets of an aged or disabled person, a violation of LSA-R.S. 14:67.21 (before its repeal by Acts 2017, No. 281 § 3); filing or maintaining false public records, a violation of LSA-R.S. 14:133 ; insurance fraud, a violation of LSA-R.S. 22:1924 ; and engaging in the business of contracting without authority, a violation of LSA-R.S. 37:2160. In addition to the criminal proceedings, more than twenty civil lawsuits have been filed against Mr. Morris or CCC in five parishes.

The notice set forth the services Trust IT provided to Mr. Morris and CCC, which would be deactivated, and Trust IT requested that the plaintiffs make alternate arrangements before the termination date. The services provided were:
• ShareSync Business-Grade File Sync
• Mobile Device Management
• Antivirus software
• Trust I.T.'s remote connectivity service
The notice also provided that Trust IT would give to CCC all of its ShareSync data on an external hard drive, and that "[p]ursuant to instructions by law enforcement and a previously served warrant, we will retain a copy of the ShareSync data, but will not produce this data to anyone other than [CCC] without a court order requiring us to produce same."

Mrs. Morris received the data as Mr. Morris was incarcerated.

The receipt provided that the USB hard drive contained:
1. ShareSync data from Matt's account as of 02-07-17
2. ShadowProtect Images from file server as of 02-07-17
3. QuickBooks data as of 02-07-17
4. Miscellaneous info from the CCC customer file
5. Export from IT Glue documentation system. Important: Passwords were exported in unencrypted, human-readable format. You will need to secure this data.

Metadata is data about data. It can show revisions and deletion of data.

At oral argument, it was represented that the criminal proceedings had been resolved, but that civil litigation was still pending.

The plaintiffs allege violations of computer-related crimes. See LSA-R.S. 14:73.1, et seq.