# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

# 2020 CA 1173

## BROOKWOOD-RIVERSIDE, L.L.C.

## VERSUS

## THE BATON ROUGE WATER WORKS COMPANY AND
## THE BATON ROUGE WATER COMPANY

**Judgment Rendered:** MAY 2 5 2021

* * * * * *

On Appeal from the Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. 679818

Honorable Timothy E. Kelley, Judge Presiding

* * * * * *

| | |
|---|---|
| H. Alston Johnson, III<br>Shelton Dennis Blunt<br>J. Alan Harrell<br>Jeffrey M. Barbin<br>Baton Rouge, LA | Counsel for Plaintiff/Appellant<br>Brookwood-Riverside, L.L.C. |
| Brett P. Furr<br>Caroline K. Darwin<br>Baton Rouge, LA | Counsel for Defendant/Appellee<br>The Baton Rouge Water Works<br>Company |

* * * * * *

## BEFORE: GUIDRY, McCLENDON, AND LANIER, JJ.

*Guidry, J. Concurs in the result.*

**McCLENDON, J.**

In this appeal, the plaintiff challenges a trial court's judgment that denied its request for a preliminary injunction. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

In August of 2017, Brookwood-Riverside, L.L.C. (Brookwood) purchased from Community Coffee, L.L.C., certain immovable property located on North Third Street in Baton Rouge to construct and operate a self-storage facility. In March of 2018, after the demolition of an existing building on the property, Brookwood unearthed an underground pipeline on the property. At the time of the purchase of the property, Brookwood obtained a title examination, but the title exam failed to reveal a servitude granted on November 5, 1959, by Community Coffee in favor of the Department of Transportation and Development (DOTD). The servitude granted DOTD the right "to construct, maintain and operate a closed storm sewer line" beneath the property. Pursuant to the servitude, DOTD installed the closed storm sewer line sometime around 1960. DOTD has used the servitude continuously since then.

Upon the discovery of the servitude beneath its property, Brookwood obtained consent from DOTD to relocate the servitude and reroute the DOTD line to accommodate the new building that was to be built over the existing DOTD line. On June 12, 2018, Brookwood executed a Ratification of Servitude in favor of DOTD, which was recorded on June 15, 2018.[1]

On February 19, 2019, Brookwood filed a Petition for Damages against the Baton Rouge Water Works Company (BRWW) asserting that BRWW was discharging a large volume of saltwater into the storm sewer system of the City of Baton Rouge/Parish of East Baton Rouge (City/Parish) through its property and without permission.[2] Brookwood alleged that it never consented to the use of its

---

[1] On April 29, 2019, Brookwood and DOTD recorded an Amendment to Ratification of Servitude and Termination of Servitude, in which DOTD released the 1959 servitude, and Brookwood and DOTD agreed to a new servitude encompassing the area of the relocated servitude.

[2] Brookwood also named as a defendant Baton Rouge Water Company, which BRWW admitted in its answer is a registered trade name of BRWW.

2

property as a conduit for transfer through the pipeline under its property for discharge of the saltwater into the storm water drainage system, which ultimately drained into the Mississippi River.[3]

On May 6, 2020, Brookwood filed a Motion for Preliminary Injunction, seeking to prohibit BRWW from discharging the saltwater through Brookwood's property.[4] Brookwood asserted that the servitude applies only to operating a closed storm sewer line and does not contemplate the entirely different use by a third party who did not obtain permission from the prior or the current owner.

Following a hearing on August 5, 2020, wherein the trial court heard testimony and received evidence, the court denied granting the preliminary injunction. In its oral reasons for judgment, the trial court found that there was no trespass, stating that the saltwater discharged by BRWW was not dangerous or hazardous and that the storm sewer line was authorized and contemplated under the 1959 servitude. The court further stated that without a trespass, Brookwood would have to establish irreparable injury, which it failed to do. Based on these findings, the trial court denied Brookwood's request for a preliminary injunction. On August 19, 2020, the trial court signed a judgment, and this appeal followed.

## DISCUSSION

Louisiana Code of Civil Procedure article 3601A provides that "[a]n injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law." The writ of injunction is a harsh, drastic, and extraordinary remedy. It should only issue in those instances where the moving party is threatened with irreparable loss or injury and is without an adequate remedy at law. Irreparable injury has been

---

[3] Brookwood subsequently filed a claim under its title insurance policy with Fidelity National Title Company (Fidelity). Fidelity fully indemnified Brookwood for the cost of relocating the DOTD line, approximately $62,000.00. Thereafter, BRWW moved to voluntarily dismiss its third-party demand against Fidelity for contribution, and on June 17, 2020, BRWW's claims against Fidelity were dismissed without prejudice.

[4] We note that the trial court recognized that the request for injunctive relief should have been by petition. See LSA-C.C.P. art. 3601D ("Except as otherwise provided by law, an application for injunctive relief shall be by petition."). However, the trial court stated that the substance of the pleading, rather than the name of the pleading, controlled and found no error in the filing.

3

interpreted to mean a loss that cannot be adequately compensated in money damages or measured by a pecuniary standard. **Morris v. Trust Technologies, LLC**, 18-0831 (La.App. 1 Cir. 2/28/19), 274 So.3d 15, 18-19.

Generally, plaintiffs seeking issuance of a preliminary injunction bear the burden of establishing by a preponderance of the evidence a *prima facie* showing that they will prevail on the merits and that irreparable injury or loss will result without the preliminary injunction. LSA-C.C.P. art. 3601; **Hill v. Jindal**, 14-1757 (La.App. 1 Cir. 6/17/15), 175 So.3d 988, 1002, writ denied, 15-1394 (La. 10/23/15), 179 So.3d 600. However, a threat of irreparable injury need not be shown when the deprivation of a constitutional right is at issue or when the act sought to be enjoined is unlawful. **Hill**, 175 So.3d at 1002. The only issues to be considered at a hearing on a preliminary injunction are whether the moving party has met its burden of proving that it is entitled to the relief sought as a matter of law and the likelihood that it will likely prevail on the merits of the case. **Louisiana Ass'n of Self-Insured Employers v. Louisiana Workforce Com'n**, 11-1892 (La.App. 1 Cir. 3/28/12), 92 So.3d 397, 400.

Although the judgment on the preliminary injunction is interlocutory, a party aggrieved by a judgment either granting or denying a preliminary injunction is entitled to an appeal. LSA-C.C.P. art. 3612B; **Hill**, 175 So.3d at 1002. We are, however, mindful that appellate review of a trial court's issuance of a preliminary injunction is limited. The issuance of a preliminary injunction addresses itself to the sound discretion of the trial court and will not be disturbed on review unless a clear abuse of discretion has been shown. **Hill**, 175 So.3d at 1002.

In its appeal, Brookwood maintains that this is a simple continuing trespass case and that BRWW is using its property without consent and compensation.[5] Therefore, Brookwood argues that it need not show irreparable injury because of

---

[5] Trespass is defined as an unlawful physical invasion of the property or possession of another person. A trespasser is one who goes upon another's property without his consent. A person damaged by trespass is entitled to full indemnification. **W & T Offshore, L.L.C. v. Texas Brine Corporation**, 17-0574 (La.App. 1 Cir. 5/10/18), 250 So.3d 970, 980, affirmed in part, reversed in part, 18-0950 (La. 6/26/19), ___ So.3d ___.

4

the unlawful trespass. Brookwood also avers that DOTD's 1959 servitude does not encompass BRWW's present use of Brookwood's property, being the discharge of nearly 300 gallons per minute of ground water from a saltwater interceptor well, and therefore, the trial court erred in denying its request for a preliminary injunction.

The record establishes that BRWW discharges water into the City/Parish storm sewer system, which is connected to the DOTD line at issue. Ultimately, the water drains into the Mississippi River. As part of a groundwater conservation plan to address saltwater intrusion into the City/Parish's drinking water, BRWW drilled an interceptor or scavenger well to intercept chlorides from the groundwater aquifer before they reached the pump station and production wells.[6] Prior to the drilling of the well, BRWW obtained a No Objection letter, dated June 18, 2012, from the Louisiana Department of Environmental Quality (LDEQ) to discharge the intercepted saltwater from the scavenger well via an eight-inch pipeline to the Mississippi River. The letter stated:

> The pipeline will tie into an existing storm drainage system at the intersection of Eiland Street and River Road ... where the groundwater will flow into the existing storm drainage system and directly to the Mississippi River. LDEQ understands the pipeline route may vary, however the point at which the flow enters the Mississippi River will remain the same.

The LDEQ letter also provided that "[t]he routing of the groundwater to the Mississippi River does not have reasonable potential to cause or contribute to a violation of the water quality standards." Thereafter, BRWW installed a system of underground drainage pipelines that tied into the existing City/Parish's drainage system located along Eiland Street. From there, the City/Parish's line ties into a DOTD line on its way to the Mississippi River. This is the DOTD line that crosses Brookwood's property. BRWW began discharging saltwater from the scavenger well in March of 2014.

---

[6] The scavenger well project was approved by Capital Area Groundwater Conservation Commission, the Louisiana Department of Natural Resources, the Louisiana Department of Health and Hospitals, the Louisiana Department of Environmental Quality, and the City/Parish.

5

The primary issue before this court is whether DOTD's 1959 servitude encompasses BRWW's use of the servitude. Brookwood argues that it does not, citing jurisprudence that servitudes in DOTD's favor for particular purposes do not extend to third-party use for different purposes. Brookwood contends that BRWW offered no written evidence that DOTD authorized it to use the storm sewer line in the first place and no evidence of any kind that DOTD purported to grant BRWW rights to Brookwood's property. Brookwood suggests that although BRWW introduced evidence at the hearing that LDEQ did not object to BRWW discharging ground water from its interceptor well into the Mississippi River, the No Objection letter in no way affected private property rights.

There are two kinds of servitudes: personal servitudes and predial servitudes. LSA-C.C. art. 533. A personal servitude is a charge on a thing for the benefit of a person. LSA-C.C. art. 534. The personal servitude of right of use confers in favor of a person a specified use of an estate less than full enjoyment. LSA-C.C. art. 639. The right of use may confer only an advantage that may be established by a predial servitude. LSA-C.C. art. 640. Rights of use are real rights which confer limited advantages of use or enjoyment over an immovable. **Richard v. Hall**, 03-1488 (La. 4/23/04), 874 So.2d 131, 145; **W & T Offshore, L.L.C. v. Texas Brine Corporation**, 17-0574 (La.App. 1 Cir. 5/10/18), 250 So.3d 970, 976, <u>affirmed in part, reversed in part</u>, 18-0950 (La. 6/26/19), ___ So.3d ___. A right of use includes the rights contemplated or necessary to enjoyment at the time of its creation as well as rights that may later become necessary, provided that a greater burden is not imposed on the property unless otherwise stipulated in the title. LSA-C.C. art. 642. Further, a right of use is regulated by application of the rules governing usufruct and predial servitudes to the extent that their application is compatible with the rules governing a right of use servitude. LSA-C.C. art. 645.[7]

---

[7] Title III of Book II of the Louisiana Civil Code of 1870 was revised, amended, and reenacted by Acts 1976, No. 103, § 1, effective January 1, 1977. The 1976 revision suppressed the personal servitude of "use" as a nominate real right and established the different category of "rights of use." 3 A.N. Yiannopoulos, Louisiana Civil Law Treatise—Personal Servitudes, § 222 (4th ed.2000). Limited personal servitudes are real rights that confer on a person limited advantages of use or

Brookwood asserts that even if DOTD could authorize third-party use without landowner consent, BRWW's use of the servitude failed to comply with Louisiana Civil Code article 642. Brookwood argues that because the interceptor well did not become operational until 2014, BRWW's use was not contemplated or necessary to enjoyment of the DOTD servitude in 1959. As to rights that later became necessary, Brookwood asserts that there is no jurisprudence suggesting that "necessary" means what later becomes the most convenient option for a non-party to the servitude. It avers that BRWW's use is entirely different from that of DOTD.

At the hearing on the preliminary injunction, Brookwood introduced verified pleadings, stipulations, and a copy of the sale of the property to Brookwood.[8] After the introduction of the evidence and argument by counsel, BRWW moved for an involuntary dismissal, which was denied. Thereafter, BRWW presented its evidence, which included numerous exhibits and the testimony of four witnesses.

Randy Hollis was accepted as an expert in the field of environmental engineering, including the design regulation and permitting of effluent discharges, both storm water and wastewater.[9] Mr. Hollis testified that DOTD's storm water system is one of two water collection systems. One is for biogenic pathogens, i.e., sanitary sewer, and the storm water system, which is a catchall for everything else. He stated that, in 1959 when the servitude was created, storm sewer systems were commonly used as a means of conveyance for all kinds of waste products by the public. With regard to the interceptor well, Mr. Hollis testified that the volume of water discharged by BRWW is less than 10% of the capacity of the DOTD line. It was Mr. Hollis's opinion that in 1959, when DOTD obtained the

---

enjoyment over an immovable belonging to another person. Yiannopoulos, § 223. Like usufruct, they are charges on property in favor of a person rather than an estate; like predial servitudes, they are necessarily charges on an immovable belonging to another owner and are confined to certain advantages of use or enjoyment. Thus, they are both "personal" and "limited." **Id.** See **Richard**, 874 So.2d at 145.

[8] Brookwood did not call any witnesses to testify.

[9] Mr. Hollis also testified as a fact witness as a consulting engineer for BRWW in the design and permitting of the interceptor well.

servitude, the servitude contemplated the flow of the saltwater from the interceptor well, which he also believed to be true today.

Ryan Scardina, the technical services manager with BRWW, testified that the flow rate of the saltwater is a constant 280 gallons per minute with an approximate chloride content of 800 parts per million. Mr. Scardina further testified that the water is flowing through the pipeline at a very low pressure, and he did not anticipate any problems with leaks. Additionally, Dennis McGehee, BRWW's water production manager, testified that BRWW monitors the salinity from the interceptor well on a weekly basis and that the salinity level is relatively constant.

In it oral reasons, the trial court found that the saltwater discharge into the drainage system fell within what was contemplated under the terms of the 1959 servitude. The trial court stated:

> I think the evidence has clearly shown that it is not as dangerous a substance in the concentrations that are present in this fact scenario. That it is not a hazardous matter at all. Basically, it is about the same level of a saltwater pool that people have. ... 1,700 parts per million or something like that is what they said a saltwater pool was. Well, this is less than 800 parts per million in this ... I find that it is not a harmful substance such as to create a trespass, and without a trespass, they would have to show irreparable injury which, of course, they have not shown irreparable injury.
> Let me go further though. From what I can see from the evidence and applying the law to the evidence that we have, the court believes that basically this was authorized and contemplated under the 1959 servitude. ... [I]t does not provide a greater burden, or impose a greater burden on the property than was allowed through the 1959 servitude.
> Also, the evidence put forth, mostly through the testimony of Mr. Hollis, is that this type of substance going through this pipeline at the time of the creation was really the kind of thing that is contemplated because at that time all kinds of things that are a lot worse than saltwater in the concentrations that we have in this case were contemplated to go through that pipe at the time the servitude was issued, and it was designed to carry those kind of deleterious materials to the river for disposal.

Based upon our review of the record, we find that the DOTD servitude created in 1959 contemplated BRWW's use of DOTD's pipeline to discharge saltwater. The servitude does not define or limit what can be discharged through the DOTD pipeline. However, contrary to Brookwood's argument that BRWW's use of the DOTD line is entirely different from that of DOTD, the DOTD line was

8

installed to convey water, which is precisely what BRWW is doing. Moreover, the water being discharged by BRWW is not harmful. As testified by Mr. Hollis, in 1959, virtually everything was discharged into the storm sewer system and contemplated by the servitude. Accordingly, we find that BRWW's use of the servitude does not exceed the scope of the servitude. Additionally, the evidence clearly established that BRWW's use of the DOTD pipeline has not placed a greater burden on Brookwood's property. No evidence has been presented to show that the contents or the volume of the saltwater discharged by BRWW poses any threat to the DOTD pipeline or Brookwood's property. BRWW's use of the DOTD pipeline is consistent with the nature and extent of the servitude, and we can find no abuse of discretion by the trial court in denying Brookwood's request for a preliminary injunction.

## CONCLUSION

For the above reasons, we affirm the trial court's August 19, 2020 judgment that denied Brookwood's request for a preliminary injunction. All costs of this appeal are assessed to Brookwood-Riverside, L.L.C.

**AFFIRMED.**